**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**August 12, 2005**

**Charles R. Fulbruge III**
Clerk

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 04-50857
(Summary Calendar)

FRANK MCFALL, II,

Plaintiff-Appellant,

versus

ALBERTO R. GONZALES, Attorney General
of United States; and DEPARTMENT OF JUSTICE,
Drug Enforcement Administration Agency,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Texas
No. 3:02-CV-585-FM

Before WIENER, BENAVIDES, and STEWART, Circuit Judges.

PER CURIAM[*]:

This is a Title VII race discrimination action raising failure to promote and retaliation claims.

The appellant, Frank McFall, II ("McFall"), appeals from the order and final judgment of the district

court dismissing his employment discrimination claims that were brought pursuant to Title VII of the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. and the Civil Rights Act of 1866, 42 U.S.C. § 1981. The district court issued the order and final judgment after granting a motion for summary judgment in favor of Alberto Gonzales, Attorney General of the United States, and the Drug Enforcement Administration Agency for the Department of Justice (collectively "the Government"). We affirm the grant of the motion for summary judgment for substantially the same reasons given by the district court.

## BACKGROUND

McFall is an African-American employed as a Special Agent with the Drug Enforcement Administration Agency for the Department of Justice ("DEA"). Since 1991, McFall has remained assigned as a Special Agent and states that since 1990, he has wanted to be a pilot with the DEA. In September of 1999, the DEA posted a vacancy announcement, Announcement CMB-99-167V, for the position of Criminal Investigator Pilot ("the position"), in the Office of Aviation Operations in El Paso, Texas.

The district court's memorandum opinion notes that the announcement expressly stated that "'Criminal Investigators, GS-1811-11/12/13, may express interest in voluntary transfer to this position' and that the position was 'not subject to the DEA's merit promotion plan.'"[1] The record shows that Timothy Tierney ("Tierney") and Gary Wheeler ("Wheeler") were assigned as Assistant Special Agents In Charge at the El Paso office, and Luke Leonard ("Leonard") was assigned to the position of Special Agent In Charge. Leonard had the authority to recommend particular candidates

---

[1] The announcement conveys that any DEA agent assigned as a Special Agent with a grade scale ("GS") of 11, 12, or 13, could apply for the position. Special Agents and Special Agent Pilots are both classified as GS-1811, Criminal Investigators; their wage scale and benefits are identical to agents in their respective grade scales.

to Richard Fiano ("Fiano"), the official responsible for selecting the candidate. Leonard also had authority to seek input from Tierney and Wheeler concerning the decision. Fiano, who was assigned as Chief of Operations for the DEA, had the authority to reject Leonard's recommendation and opt instead to select a candidate from the Best Qualified List ("BQL"), a list identifying agents with established qualifications for the position. The announcement provided that applicants for the position should have documented flight experience and 250 hours of flight time as a Pilot in Command. Notwithstanding, the Aviation Operations handbook specified that the Special Agent In Charge of Aviation Operations had discretion to consider other factors, besides general flight experience, in selecting an agent for the position.

Meeting all the requisite qualifications, McFall applied for the position. At the time he filed his application, McFall was ranked as a GS-13, step 2, for purposes of his federal pay scale. Indeed, the evidence reveals that the DEA's Office of Personnel placed McFall's name, along with eleven other agents, on the BQL register. Tierney and Wheeler recommended Special Agent Terrence Epp ("Epp"), a Caucasian, also on the BQL to fill the vacant position. McFall was denied his request to transfer, and Epp was selected to fill the position. The record indicates that although McFall had more "specialty" training than Epp, i.e., he had more flight time recorded, Fiano stated he selected Epp because Epp was more qualified than McFall and not because of his race.

McFall commenced this suit with the Equal Employment Opportunity Commission ("EEOC"), charging that the DEA's decision not to reassign him was racially motivated and in retaliation for his having filed a prior EEOC claim against the DEA. The case proceeded to a hearing before an administrative law judge ("the ALJ"), who concluded that even though McFall had established a prima facie case of race discrimination, the DEA's decision not to reassign McFall was not racially

3

motivated. The ALJ also concluded that McFall had failed to established a prima facie case of retaliation. McFall appealed the ALJ's decision to the DOJ's Complaint Adjudication Office. The hearing officer assigned to the case affirmed the ALJ's decision, stating that "[c]omplainant [McFall] failed to establish that he was [the]'best qualified' candidate for the position. The record contains no evidence that complainant's qualifications were 'so plainly superior' to those of [Epp] as to warrant a finding of pretext." Following the decision of the Complaint Adjudication Office, McFall filed the instant action in the United States District Court for the Western District of Texas. In response, the Government filed a motion to dismiss, or in the alternative, a motion summary judgment. After considering all the evidence, the district court granted summary judgment in favor of the Government on the basis that McFall failed to establish a prima facie case of discrimination by not proving that he suffered an adverse employment action. For substantially the same reasons, the district court concluded that McFall did not make the requisite showing for a retaliation claim. This timely appeal by McFall ensued.

**STANDARD OF REVIEW**

We review de novo a district court's grant of a motion for summary judgment, applying the same standard as the district court in the first instance. See Burge v. Parish of St. Tammany, 187 F.3d 452, 465 (5th Cir. 1999). Summary judgment is appropriate where the moving party establishes "there is no genuine issue of material fact and that [it] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); id. at 465.

**APPLICABLE LAW**

Employment discrimination claims brought pursuant to 42 U.S.C. § 2000d and § 1988 are analyzed under the same burden shifting analysis as claims brought under Title VII of the Civil Rights

Act of 1964, as amended at 42 U.S.C. 2000e et seq. See Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 316-17 (5th Cir. 2004); Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309, 311 (5th Cir. 1999). McFall's claims will be addressed accordingly.

To prevail on a claim of race discrimination under Title VII, or § 1981 where there is no direct evidence of discrimination such as in this case, a plaintiff must first make a prima facie showing of discrimination. To establish a prima facie case of race discrimination involving a failure to promote claim, the plaintiff must prove that: (1) he belongs to a protected group under Title VII; (2) he applied for and was qualified for the position he sought; (3) he was not promoted to the position sought, i.e, he suffered an adverse employment action; and (4) his employer promoted an employee to the position sought by the plaintiff who was not a member of the protected class. See Davis, 383 F.3d at 316-17; Manning v. Chevron Chem. Co., LLC, 332 F.3d 874, 881 (5th Cir. 2003); Pratt v. City Houston, Tex., 247 F.3d 601, 606 n.2 (5th Cir. 2001); Jefferies v. Harris County Cmty. Ass'n, 615 F.2d 1025, 1029 (5th Cir. 1980). "[A] plaintiff must establish all four elements of the case in order to prove that she was treated differently." Scales v. Slater, 181 F.3d 703, 709 (5th Cir. 1999). The Title VII burden shifting analysis also applies to claims of retaliation. 42 U.S.C. § 2000e-3(a). See Davis, 383 F.3d at 319; Jaynes v. Pennzoil Co., 207 F.3d 296, 299 (5th Cir. 2000); see also Dollis v. Rubin, 77 F.3d 777, 782 (5th Cir. 1995).

Once a prima facie case is established, a presumption of discrimination or retaliation arises. See Dollis, 77 F.3d at 782; Pratt, 247 F.3d at 606. Thereafter, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the alleged discriminatory conduct the employee is challenging. Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). This burden is one of production, not persuasion; therefore, "the employer need not prove that it was actually motivated

by its proffered reason." Id. Simply put, if the employer meets its burden, "the presumption of discrimination created by the plaintiff's prima facie case falls away." Id. The burden of persuasion then shifts back to the plaintiff to demonstrate that his employer's articulated reason was merely a pretext for unlawful discrimination. Id. The court's factual inquiry then becomes more specific. Id. To avoid dismissal by summary judgment at this stage, this court has directed that,

> the employee must show that the employer's putative legitimate, nondiscriminatory reason was not its real reason, but was merely a pretext for discrimination. In other words, after a defendant employer has met its burden of production, an employee plaintiff . . . must . . . demonstrate that there is a material issue of disputed fact as to discrimination. . . . In some instances, proof of pretext alone will suffice.

Id. (footnotes omitted). In short, the question for us at the pretext stage is whether a rational trier of fact could find that the Government discriminated against McFall on the basis of race. See Pratt. 247 F.3d at 606.

## DISCUSSION

### A. Failure To Transfer

McFall contends that the district court erred in determining that he did not establish an adverse employment action on the basis that the Government failed to transfer him to the position. The district court determined that the position for which McFall was seeking to be reassigned involved a purely lateral transfer, and therefore, that the Government's decision not to transfer him was not an adverse employment action within the meaning of Title VII. We agree.

To satisfy the adverse employment action prong of the burden shifting test, McFall was essentially required to show that the Government's decision not to transfer him to the position resulted in a failure to promote him or that the decision amounted to some form of objective demotion. See, e.g., Davis, 383 F.3d at 17. Well established Fifth Circuit law has directed that a

6

purely lateral transfer cannot be considered an adverse employment action within the meaning of Title VII. <u>See, generally</u> <u>Burger v. Cent. Apartment Mgmt., Inc.</u>, 168 F.3d 875, 879 (5th Cir. 1999) (directing that the denial of plaintiff's request for a purely lateral transfer does not constitute an adverse employment action under Title VII); <u>see also</u> <u>Banks v. East Baton Rouge Parish Sch. Bd.</u>, 320 F.3d 570, (5th Cir. 2003); <u>Burger</u>, 168 F.3d at 879 (stating that "[r]efusing an employee's request for a purely lateral transfer does not qualify as an ultimate employment decision . . .[because] such a refusal is not akin to acts such as hiring, granting leave, discharging, promoting, and compensating") (citation and internal quotations omitted). Title VII was not enacted to address every employment decision. <u>Banks</u>, 320 F.3d at 575; <u>Burger</u>, 168 F.3d at 878; <u>Mattern v. Eastman Kodak Co.</u>, 104 F.3d 702, 707 (5th Cir. 1997). "Only ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating satisfy the 'adverse employment action' element of a prima facie retaliation case. . . ." <u>Banks</u>, 320 F.3d at 575; <u>see also</u> <u>Mattern</u>, 104 F.3d at 707. "For example, a decision made by an employer that only limits an employee's opportunities for promotion or lateral transfer does not qualify as an adverse employment action under Title VII." <u>Banks</u>, 320 F.3d at 575. A determining factor in the analysis is whether McFall's employment status would have been significantly altered had the Government granted his request for reassignment. <u>See</u> <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 761 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."); <u>but see</u> <u>Evans v. City of Houston</u>, 246 F.3d 344, 353 (5th Cir. 2001) (finding that employee's demotion was an adverse employment action because it altered plaintiff's status). Thus, "an employment action that 'does not affect job duties, compensation, or benefits' is not an adverse

7

employment action" for purposes of Title VII. Banks, 320 F.3d at 575 (quoting Hunt v. Rapides Healthcare Sys., LLC, 277 F.3d 757, 769 (5th Cir.2001)). This determination cannot be based upon an employee's subjective belief that he suffered an adverse employment action, but rather on a determination that the employer's decision was objectively equivalent to a demotion either in form or substance. See, e.g. Sharp v. City of Houston, 164 F.3d 923, 933(5th Cir. 1999) (stating that "[t]o be equivalent to a demotion, a transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse--such as being less prestigious or less interesting or providing less room for advancement").

It is undisputed that the Government's denial of McFall's voluntary request for a transfer did not result in a change of his pay scale, grade scale, or benefits. The record also indicates that the positions of Special Agent and Special Agent Pilot are both classified as GS-1811, and that the agents assigned to those positions shared many of the same responsibilities and were compensated at the same level, according to their grade scale. Indeed, the district court found and our review confirms that despite the Government's decision not to grant McFall's request for transfer, McFall's salary actually increased. The record additionally reveals that Announcement CMB-99-167V expressly relayed that the position was for voluntary reassignment and "not subject to the DEA's merit promotion plan." Additionally, McFall's deposition testimony states that he understood the position was for a "voluntary" transfer. The slight differences in employment conditions that McFall points to in his brief concerning the Government's "adverse employment decision," amounts to no more than a tangential effect to his employment status, not a significant alteration. Based on the foregoing, we find that the Government's refusal to transfer McFall to the position was not an adverse employment

8

action within the meaning of Title VII. Therefore, McFall's claim that the district court erred in granting the motion for summary judgment on this claim is without merit.

As to McFall's retaliation claim, he was also required to prove that the Government's decision amounted to an adverse employment action. For substantially the same reasons stated above, McFall has failed to show that a purely lateral transfer amounts to an adverse employment action within the meaning of Title VII. Because McFall fails to establish a prima facie case of retaliation, the district court's grant of the motion for summary judgment on this claim is affirmed.

## **CONCLUSION**

Based on the foregoing, McFall has not sufficiently carried his burden to preclude the granting of the motion for summary judgment. The order and final judgment of the district court dismissing his discrimination claims are, therefore, AFFIRMED.

AFFIRMED.