

# NUMBER 13-07-00119-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

MARGARET VILLARREAL,                                                      Appellant,

v.

DEL MAR COLLEGE,                                                          Appellee.

**On appeal from the 117th District Court of Nueces County, Texas.**

# MEMORANDUM OPINION

### Before Justices Yañez, Rodriguez, and Benavides
### Memorandum Opinion by Justice Yañez

Appellant, Margaret Villarreal, appeals from a summary judgment granted in favor of appellee, Del Mar College ("the College"), on Villarreal's retaliation and national origin discrimination claims.[1]  By two issues, Villarreal contends the trial court erred in (1) granting summary judgment and dismissing her retaliation and discrimination claims and (2) improperly defining the "adverse employment action" element of her retaliation claim.  We

---

[1] *See* TEX. LAB. CODE ANN. §§ 21.051, 21.055 (Vernon 2006).

affirm.

## I. Background

Villarreal began her employment with the College in 1978 as a data entry clerk. In 1985, she was promoted to the position of Senior Reporting Technician in the College Registrar's Office. Her immediate supervisor was Frances Jordan, the Registrar and Assistant Dean of Enrollment Services. Jordan's supervisor was Jose Rivera, a Vice President of the College. Villarreal's duties included data collection and preparation of reports to the Texas Higher Education Coordinating Board. The reports are used by the State to allocate funding. Villarreal's position is classified as "nonexempt," consistent with federal wage and hour laws.[2]

Villarreal requested several times that her position be reclassified from nonexempt to exempt.[3] Pursuant to the denial of an earlier request to reclassify her position, Villarreal filed a charge of discrimination with the EEOC and Texas Commission on Human Rights.[4] In 2002, she and the College reached a settlement agreement, by which the College paid her a lump sum and upgraded her position from "Grade 7" to "Grade 8," in exchange for

---

[2] *See* Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219 (2009). Prior to 2006, the College itself classified its job positions as "exempt" or "nonexempt" from federal wage and hour laws, based on FLSA guidelines and exemptions. Prior to 2006, the "exempt" classification was referred to as "administrative/ professional/ technical" or "APT." After 2006, the College retained a consulting group, which prepared job descriptions and classified employees as "exempt" or "nonexempt." For purposes of this opinion, "APT" is synonymous with "exempt," and in the interest of clarity, we use the terms "exempt" and "nonexempt" throughout this opinion. Villarreal's position of Senior Reporting Technician has always been classified as a "nonexempt" position.

[3] Villarreal contends she has been "stuck" at the top of the non-exempt salary scale and that reclassification to exempt status would enable her to receive higher pay.

[4] When the Texas Commission on Human Rights Act (TCHRA) was recodified into the Texas Labor Code, the revised law omitted as unnecessary the short title of the act. *See Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 377 (Tex. 2004). Accordingly, we refer to chapter 21 of the labor code, instead of the TCHRA, as the Texas employment discrimination statute was commonly referred to in the past. A copy of Villarreal's earlier charge of discrimination does not appear in the record before us.

2

her agreement not to sue. The position remained classified as nonexempt.

In late 2003, Villarreal again requested that her position be reclassified as exempt. Jordan and Rivera signed the request, which was then forwarded to Lewis Finch, Assistant Director of Human Resources.[5] Villarreal based her request for reclassification on her duties to collect and analyze data regarding on-line courses offered by the College. In the course of reviewing the request, Finch asked for additional information from Jordan and Rivera regarding Villarreal's duties. Finch also provided Rivera with the guidelines used to determine if a position is properly classified as exempt, and asked for his views as to whether Villarreal's position met the guidelines. After reviewing the guidelines and consulting with Jordan, Rivera responded that in his judgment, the position of Senior Reporting Technician did not meet the criteria for exempt status. Finch completed the evaluation, concluded that the position was properly classified as nonexempt, and recommended denial of the reclassification request. The Acting President of the College, Jose Alaniz, agreed and denied the request.

Villarreal filed several charges of discrimination, alleging retaliation and national origin discrimination. She then sued the College, alleging that she (1) suffered retaliation for having filed her earlier charge of discrimination, and (2) was discriminated against because of her national origin.

On October 18, 2006, the College moved for summary judgment on both traditional

---

[5] The task of reviewing employee requests for reclassification was assigned to the College's Dean of Equal Employment Opportunity and Affirmative Action. However, because the Dean was on leave of absence during the relevant time period, Villarreal's request was directed to Finch. The final decision on reclassifications was made by the President of the College. According to Finch's deposition testimony, an employee requesting reclassification must fill out a questionnaire, which requires the employee to provide detailed information about the employee's job duties and responsibilities.

and no-evidence grounds.[6]  In support of its motion, the College submitted the following summary judgment evidence:  (1) excerpts from Villarreal's deposition testimony; (2) Finch's affidavit; (3) Jordan's affidavit; (4) documents detailing the College's review of Villarreal's position; and (5) a copy of the 2002 settlement agreement between Villarreal and the College.

On November 1, 2006, Villarreal filed her response to the College's motion, and on November 7, 2006—the day prior to the summary judgment hearing—she filed a supplemental response.[7]  Villarreal submitted various documents as summary judgment evidence, including:  (1) her own affidavit; (2) an expert report regarding calculations as to Villarreal's "lost past and future wages and benefits;" (3) the affidavit of Nelda Sanchez, a former co-worker of Villarreal's, regarding Jordan's "demeaning and condescending" treatment of Villarreal; (4) Jordan's deposition testimony; (5) Finch's deposition testimony; (6) Rivera's deposition testimony; (7) deposition testimony of Vickie Natale, Dean of Administrative Services, who allegedy denied Villarreal access to information needed to compile her reports; (8) Villarreal's completed questionnaire regarding her reclassification request; (9) correspondence regarding Villarreal's work product; (10) information regarding the salary structure used by the College for exempt positions; (11) salary information for David Andrus, Barbara Thompson, and Sue Beseda, persons Villarreal alleged to be "similarly situated employees"; (12) e-mail correspondence reflecting work performed by

---

[6] *See* TEX. R. CIV. P. 166a(c), (i).

[7] The record reflects that at the November 8, 2006 hearing, the trial judge acknowledged receipt of Villarreal's supplemental response, as well as several documents filed by the College, including the College's Motion to Strike Villarreal's Summary Judgment Evidence, its Motion to Strike and Objections to Nelda Sanchez's Affidavit, and its Objection to Villarreal's Affidavit.  At the conclusion of the hearing, the trial judge stated that she had "everything" and would "spend the afternoon looking at this."  The order granting summary judgment and dismissing Villarreal's claims was signed November 29, 2006.

Villarreal; (13) guidelines used by the College for classifying a position as exempt; and (14) excerpts from the deposition testimony of Jordan, Finch, and Natale.

The trial court granted summary judgment without specifying the ground or grounds upon which it relied.

## II. Standards of Review and Applicable Law

### A. Summary Judgment

The standard of review for the grant of a motion for summary judgment is determined by whether the motion was brought on no-evidence or traditional grounds.[8] A no-evidence summary judgment is equivalent to a pretrial directed verdict, and this Court applies the same legal sufficiency standard on review.[9] In an appeal of a no-evidence summary judgment, this Court reviews the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences.[10] If the non-movant produces evidence to raise a genuine issue of material fact, summary judgment is improper.[11]

All that is required of the non-movant is to produce a scintilla of probative evidence to raise a genuine issue of material fact.[12] "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion of a fact.'"[13] Conversely, more than a scintilla exists when the evidence "rises to a level that

---

[8] *See* TEX. R. CIV. P. 166a(c), (i); *see also Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 771 (Tex. App.–Corpus Christi 2003, no pet.) (op. on reh'g).

[9] *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Ortega*, 97 S.W.3d at 772.

[10] *City of Keller v. Wilson*, 168 S.W.3d 802, 825 (Tex. 2005) (noting that review of a "no-evidence" motion for summary judgment is effectively restricted to the evidence contrary to the motion); *Ortega*, 97 S.W.3d at 772.

[11] TEX. R. CIV. P. 166a(i).

[12] *Ortega*, 97 S.W.3d at 772.

[13] *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

5

would enable reasonable and fair-minded people to differ in their conclusions."[14]   In determining whether the non-movant has produced more than a scintilla of evidence, we review the evidence in the light most favorable to the non-movant, crediting such evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not.[15]  The burden of producing evidence is entirely on the non-movant; the movant has no burden to attach any evidence to the motion.[16]  We may not consider any evidence presented by the movant unless it creates a fact question.[17]

A no-evidence motion for summary judgment must explicitly state that there is no evidence of one or more of the opponent's claim or claims, which the motion must also identify.[18]  A no-evidence motion for summary judgment that does not "challenge a specific element of [the non-movant's] claim" is not reviewed as a no-evidence motion.[19]  When a no-evidence motion for summary judgment does not specifically state which elements lack evidence, the motion should be treated as a motion for a 166a(c) summary judgment.[20] The dispositive inquiry is whether the motion provides fair notice to the nonmovant of the basis on which summary judgment is sought.[21]

---

[14] *Id.* (citing *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 25 (Tex. 1994)).

[15] *Tamez*, 206 S.W.3d at 582; *City of Keller*, 168 S.W.3d at 827.

[16] TEX. R. CIV. P. 166a(i).

[17] *Binur v. Jacobo*, 135 S.W.3d 646, 651 (Tex. 2004); *Newkumet v. Allen*, 230 S.W.3d 518, 521 (Tex. App.–Eastland 2007, no pet.).

[18] *Johnson v. Felts*, 140 S.W.3d 702, 706 (Tex. App.–Houston [14th Dist.] 2004, pet. denied) (citing *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex. 2002)).

[19] *Weaver v. Highlands Ins. Co.,* 4 S.W.3d 826, 829 n.2 (Tex. App.–Houston [1st Dist.] 1999, no pet.).

[20] *Amouri v. Sw. Toyota, Inc.*, 20 S.W.3d 165, 168 (Tex. App.–Texarkana 2000, pet. denied).

[21] *See Waite v. Woodard, Hall & Primm, P.C.*, 137 S.W.3d 277, 281 (Tex. App.–Houston [1st Dist.] 2004, no pet.).

We review the trial court's granting of a traditional motion for summary judgment *de novo*.[22] When reviewing a traditional summary judgment, we must determine whether the movant met its burden to establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[23] The movant bears the burden of proof in a traditional motion for summary judgment, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.[24] We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor.[25]

We will affirm a traditional summary judgment only if the record establishes that the movant has conclusively proved its defense as a matter of law or if the movant has negated at least one essential element of the plaintiff's cause of action.[26] A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence.[27] Only when the movant has produced sufficient evidence to establish its right to summary judgment does the burden shift to the non-movant to come forward with competent controverting evidence raising a genuine issue of material fact with

---

[22] *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Branton v. Wood*, 100 S.W.3d 645, 646 (Tex. App.–Corpus Christi 2003, no pet.).

[23] Tᴇx. R. Cɪᴠ. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

[24] *See Sw. Elec. Power Co.*, 73 S.W.3d at 215.

[25] *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

[26] *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004); *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997); *Clear Creek Basin*, 589 S.W.2d at 678.

[27] *City of Keller*, 168 S.W.3d at 816.

regard to the element challenged by the defendant.[28]  A defendant seeking summary judgment on an affirmative defense must conclusively prove all the elements of the affirmative defense.[29]  To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law.[30]

When the trial court's judgment does not specify which of several grounds proposed was dispositive, we affirm on any ground offered that has merit and was preserved for review.[31]

## B.  Discrimination

Under section 21.051 of the labor code, an employer may not discriminate against or discharge an employee based on "race, color, disability, religion, sex, national origin, or age."[32]  The Texas Legislature modeled chapter 21 of the Texas Labor Code after federal law for the express purpose of carrying out the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments.[33]  Consequently, when reviewing an issue in a proceeding brought under chapter 21, we may look not only to cases involving the state

---

[28] *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *see Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

[29] *Steel*, 997 S.W.2d at 223; *see* TEX. R. CIV. P. 166a(b), (c).

[30] *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996).

[31] *Joe v. Two Thirty Nine J.V.,* 145 S.W.3d 150, 157 (Tex. 2004).

[32] *See* TEX. LABOR CODE ANN. § 21.051; *Autozone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008); *Herbert v. City of Forest Hill*, 189 S.W.3d 369, 374 (Tex. App.–Fort Worth 2006, no pet.).

[33] TEX. LAB. CODE ANN. § 21.001(1) (Vernon 2006); *Autozone, Inc.*, 272 S.W.3d at 592; *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003); *City of Forest Hill*, 189 S.W.3d at 374.

8

statute, but also to cases interpreting the analogous federal provisions.[34]

In discrimination cases brought under the Texas Labor Code, a prima facie case of discrimination is made by showing that the plaintiff (1) is within a protected group, (2) was adversely affected or suffered an adverse employment action, and (3) was treated less favorably than similarly situated members outside the protected class.[35]  In addition, in order to prove causation, the plaintiff must establish that national origin "was a motivating factor for an employment practice, even if other factors also motivated the practice, unless [national origin] . . . is combined with objective job-related factors to attain diversity in the employer's work force."[36]  To establish a prima facie case of discrimination involving a failure-to-promote claim, the plaintiff must prove that:  (1) she belongs to a protected group under Title VII; (2) she applied for and was qualified for the position sought; (3) she was not promoted to the position sought, i.e, she suffered an adverse employment action; and (4) her employer promoted an employee to the position sought by the plaintiff who was not a member of the protected class.[37]

After the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate legitimate, nondiscriminatory reasons for any allegedly unequal treatment.[38]  After the employer articulates legitimate, nondiscriminatory reasons, the burden shifts back to the plaintiff to prove that the employer's articulated reasons are a

---

[34] *Autozone, Inc.*, 272 S.W.3d at 592; *Canchola*, 121 S.W.3d at 739; *City of Forest Hill*, 189 S.W.3d at 374-75.

[35] *See City of Forest Hill*, 189 S.W.3d at 375.

[36] *See id.*

[37] *McFall v. Gonzales*, 143 F. App'x 604, 607 (5th Cir. 2005).

[38] *City of Forest Hill*, 189 S.W.3d at 375 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

9

mere pretext for unlawful discrimination.[39]  Although the burden of production shifts, the

burden of persuasion remains continuously with the plaintiff.[40]

## C.  Retaliation

The Fifth Circuit has recently stated the standard for retaliation claims:

> Like discrimination claims, we analyze retaliation claims using the *McDonnell* framework.  Thus, the plaintiff has the initial burden of establishing a prima facie case.  To establish a prima facie case of retaliation, the plaintiff must show that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal link existed between the protected activity and the adverse employment action.  The Supreme Court recently clarified in *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, [68] (2006), that for purposes of Title VII, an "adverse employment action" is defined differently in the retaliation context than it is in the discrimination context.  In the retaliation context, it is an action that "a reasonable employee would have found . . . [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  The causal link required by the third prong does not rise to the level of a "but for" standard at the prima facie stage.[[41]]  "Close timing between an employee's protected activity and an adverse action against [her] may provide the 'connection' required to make out a prima facie case of retaliation." *Swanson v. Gen. Servs. Admin*., 110 F.3d 1180, 1188 (5th Cir. 1997); *see, e.g., Richard v. Cingular Wireless LLC*, 233 F. App'x 334, 338 (5th Cir. 2007) (concluding that two and one half months is a short enough time period to support an inference of a causal link); *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471-72 (5th Cir. 2002) (holding that a five-month lapse, by itself, does not support an inference of a causal link).

> Assuming the plaintiff establishes a prima facie case, then the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.  If the employer articulates a legitimate nondiscriminatory reason, then "any presumption of discrimination raised by the plaintiff's prima facie case vanishes."

---

[39] *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804).

[40] *Id.* (citing *McDonnell Douglas*, 411 U.S. at 803).

[41] *See Evans v. Tex. Dep't. of Transp.* , 547 F. Supp. 2d 626, 655 (E.D. Tex. 2007), *aff'd*, 273 F. App'x. 391 (5th Cir. 2008) (noting that to establish a causal link at prima facie stage, a plaintiff need not prove that her protected activity was the sole factor in motivating the employer's challenged decision; rather, a causal link is established when the evidence demonstrates that the employer's decision to take adverse action was based in part on knowledge of the employee's protected activity).

In the final stage of the *McDonnell* framework, the plaintiff bears the ultimate burden of demonstrating a genuine issue of material fact as to whether the employer's proffered reason is a pretext for a retaliatory purpose. The plaintiff must show that "the adverse employment action taken against the plaintiff would not have occurred 'but for' her protected conduct." This court has expressly rejected the notion that temporal proximity standing alone is sufficient to establish but-for causation.[42]

In determining whether an adverse employment action was taken as a result of retaliation, the focus is on the final decision-maker.[43] When the titular decision-maker "serves as the 'cat's paw' of those who were acting from retaliatory motives, the causal link between the protected activity and adverse employment action remains intact."[44]

## III. Discussion

In her first issue, Villarreal contends the trial court erred in granting summary judgment and dismissing her claims for retaliation and national origin discrimination. We begin by addressing Villarreal's retaliation claim.

## A. Retaliation Claim

Villarreal contends that by refusing to reclassify her position as exempt, the College denied her a "promotion." According to Villarreal, over the year following the 2002 settlement of her earlier charge of discrimination, Jordan, her immediate supervisor, subjected Villarreal to various retaliatory acts, including withholding training information and access to computer information, reassigning some of her duties to others, and providing false information regarding her duties to Finch and Rivera—information on which they

---

[42] *McCullough v. Houston County Tex.*, 297 F. App'x 282, 288-89 (5th Cir. 2008) (some internal citations omitted); *see* TEX. LAB. CODE ANN. § 21.055; *City of Forest Hill*, 189 S.W.3d at 376-77; *Johnson v. City of Houston*, 203 S.W.3d 7, 11 (Tex. App.–Houston [14th Dist.] 2006, pet. denied).

[43] *Ackel v. Nat'l Commc'ns., Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (internal quotations omitted).

[44] *Evans*, 547 F. Supp. 2d at 656 (quoting *Gee v. Principi*, 289 F.3d 342, 346 (5th Cir. 2002)).

relied in denying Villarreal's request for reclassification.

In its motion for summary judgment, the College argued that "it is impossible for Villarreal to establish the required 'but-for' causal nexus between the protected conduct and the activities she contends are adverse." According to the College, Villarreal "cannot meet [her] burden" to present either direct evidence or "admissible evidence from which a discriminatory or retaliatory motive could reasonably be inferred." The College also argues that Villarreal's retaliation claim fails because the College has provided legitimate, non-discriminatory and non-retaliatory reasons for its action and that "Villarreal has no evidence that the College's reasons are pretextual."[45]

In her response to the College's motion, Villarreal devoted a single sentence to the causation element of her retaliation claim:

Element No. 3: A Causal Nexus Between Protected Activity and Adverse Employment Action

The decision-maker knew of Plaintiff's protected activity:

25. Plaintiff filed her previous charge of discrimination against defendant and named Frances Jordon [sic], specifically, Jordan has remained Plaintiff's supervisor during the events of this lawsuit.

In her supplemental response, Villarreal provides a slightly revised version of the sentence:

Element No. 3: A Causal Nexus Between Protected Activity and Adverse Employment Action

---

[45] We note that in its motion for summary judgment, the College recited the standards for both a traditional and no-evidence motion, and "move[d] the Court to grant summary judgment, either as a 'no-evidence' or traditional summary judgment." As noted, the determination of whether a no-evidence motion is sufficiently specific in challenging an element of a claim is governed by whether the motion provides fair notice to the non-movant of the basis on which summary judgment is sought. *See Waite*, 137 S.W.3d at 281. We conclude that here, the College's motion provides fair notice to Villarreal that it is challenging the causation element of her retaliation claim. We also note that Villarreal did not challenge the College's no-evidence motion as insufficiently specific at trial, nor does she do so on appeal.

The decision-maker knew of Plaintiff's protected activity:

25. Plaintiff filed her previous charge of discrimination against Defendant and named Frances Jordon [sic], specifically. Jordan engaged in a prior fact finding investigation and has remained Plaintiff's supervisor during the events of this lawsuit.

Villarreal does not cite any evidence in support of her assertion that there is a causal nexus between her protected activity (her earlier Charge of Discrimination) and the alleged retaliatory "adverse employment action" that she suffered.[46]

Without addressing whether the College's refusal to reclassify Villarreal's position as exempt constituted an adverse employment action, we hold that there is no evidence that the College's denial of the request for reclassification or any of the other matters complained of were causally related to Villarreal's exercise of protected activity.

Moreover, whether or not Villarreal established a prima facie case of retaliation, the College has offered legitimate non-retaliatory reasons for its refusal to reclassify Villarreal's position as exempt. In his deposition testimony, which Villarreal attached to her response, Finch states that after analyzing the job duties and responsibilities of Villarreal's position and reviewing the College's and FLSA's criteria for exempt positions, he determined that the position did not meet the College or FLSA criteria for exempt positions. Villarreal has not pointed to anything in the record demonstrating a genuine issue of material fact as to whether the College's proffered reason is pretextual and that but for the filing of her earlier charge of discrimination, the College would have approved her request for

---

[46] In her response and supplemental response, in the section addressing the "adverse employment action" element of her retaliation claim, Villarreal cites the denial of her request to reclassify her position as exempt. She also alleges that she is paid substantially less than "coworkers with similar levels of responsibility, using the same data base and with similar reporting functions." In support of this statement, Villarreal cites her own affidavit.

13

reclassification.[47]  We hold the trial court did not err in granting the College's motion for summary judgment on no-evidence grounds with regard to Villarreal's retaliation claim.[48]

## B.  Discrimination Claim

In its motion for summary judgment, the College argued it is entitled to summary judgment on Villarreal's claim for national origin discrimination because (1) its "denial of Villarreal's request to change the status of the position to non-exempt is not a 'failure to promote'"; and (2) Villarreal cannot establish the fourth element of a prima facie case for discrimination in a failure-to-promote case:  that the College sought applications from others outside the protected class for the position.[49]  The College also argued that Villarreal's discrimination claim fails because the College offered legitimate, non-discriminatory  reasons for its refusal to reclassify Villarreal's position, and she has no evidence that the College's reasons are pretextual.

---

[47] *See McCullough*, 297 F. App'x at 288.

[48] The College also asserted that it was entitled to summary judgment on traditional grounds because it offered legitimate, non-retaliatory reasons for its actions and Villarreal had no evidence that the College's reasons were pretextual.  We agree.  The College's summary judgment evidence included Finch's affidavit, in which he stated that his recommendation for denying Villarreal's request was based on his determination that the position did not meet the College's or the FLSA's criteria for exempt positions.  Villarreal provided no summary judgment evidence rebutting the College's proffered legitimate non-discriminatory reasons for denying her request.  Villarreal simply asserted that Jordan "provided false and incorrect information" regarding Villarreal's job duties.  Although Jordan admitted in her deposition testimony that Villarreal "directs" the work of the data entry clerks in the Registrar's office, she also stated that Villarreal had no authority to hire and fire, evaluate other employees, or exercise any other supervisory responsibilities.  Accordingly, we hold that the College is entitled to summary judgment on traditional grounds because it offered legitimate, non-retaliatory reasons for its actions and Villarreal had no evidence that the College's reasons were pretextual. *See Fuentes v. Postmaster Gen. of U.S. Postal Serv.*, 282 F. App'x 296, 304 (5th Cir. 2008) (finding that even if plaintiff could make prima facie case, summary judgment was proper where plaintiff could not prove defendant's justifications were pretextual).

[49] *See Gonzales*, 143 F. App'x at 607.  We construe the College's argument as contending that Villarreal has no evidence of the fourth element of a prima facie case of discrimination based on failure to promote:  that she has no evidence that the College continued to seek or promoted applicants who were outside the protected class for the position, or  that she was treated less favorably than other similarly situated employees. *See id.*; *City of Forest Hill*, 189 S.W.3d at 375.

14

In her response and supplemental response,[50] Villarreal argued that she has established the fourth element of her prima facie case by identifying four similarly-situated Anglo employees of the College, whose jobs are similar to Villarreal's. Specifically, Villarreal contends, "David Andrus, Jay Knioum, Sue Beceda and Barbara Thompson are or were Anglo employees of [the College], their jobs are similar to [Villarreal's] and they receive substantially higher wages for the same work as [Villarreal] performs." As evidence, Villarreal refers to her own affidavit and "Salary Information Sheets" for Andrus, Thompson, and Beseda, identifying each employee's title, department, salary, and "FLSA status," which is exempt.

We note that the College filed objections to and moved to strike Villarreal's affidavit on numerous grounds, including that it is "rife with inadmissible hearsay, opinions, and conclusory statements." The record does not reflect that the trial court ruled on the College's objections or motion to strike. Objections to the substance of summary-judgment evidence may be raised for the first time on appeal.[51] The College's objection that Villarreal's affidavit contains conclusory statements challenges the substance of Villarreal's summary-judgment evidence, and we may therefore address the objection.[52] We decline to do so, however, because even if considered, the relevant portions of Villarreal's affidavit

---

[50] The sections addressing this issue in Villarreal's response and supplemental response are identical, except that the supplemental response refers to evidence regarding salary information for three of the allegedly similarly-situated individuals.

[51] *See Page v. State Farm Lloyds*, 259 S.W.3d 257, 265-66 (Tex. App.–Waco 2008, pet. filed) (distinguishing objections to *form* of summary-judgment evidence, which are preserved only if objections are made and ruled on by trial court from objections to *substance* of summary-judgment evidence, which may be raised for first time on appeal) (citing *Choctaw Props., L.L.C. v. Aledo Indep. Sch. Dist.*, 127 S.W.3d 235, 241 (Tex. App.–Waco 2003, no pet.) and *Trusty v. Strayhorn*, 87 S.W.3d 756, 765 (Tex. App.–Texarkana 2002, no pet.)).

[52] *See id.*

15

do not assist her in avoiding summary judgment.

Villarreal's affidavit states, in relevant part:

> Third, by comparing me with others at the College with similar responsibility such as those whose primary task [i]s to work with the same data base I do and/or have substantial state reporting functions, I am paid substantially less than they. As to most comparators, I have been employed at the College much longer. David Andrus, an Anglo employee who has not charged discrimination, has recently become the Director of Institutional Research (IR). He prepares some reports to the State Board as I do as well as reports to federal agencies and the Board of Regents. He uses my reports and collected data to present in slightly different summary form to the Board. The job is APT scale and pays substantially more. See Andrus Deposition, Exhibit H, page 49-50. Another example for comparison is Jay Knioum at College Relations, an Anglo who has not charged discrimination against the College. He prepares reports using the same or similar databases I use. He has less years at the College than me, is APT level and earns substantially more than I earn. Also, Sue Beceda [sic] was a Manager at the Payroll Department before she retired and passed away. She used databases created by a number of data entry clerks as I do and created reports required by the State and other entities as I do. She was an Anglo employee who had not charged discrimination against her employer. She did not have a college degree and she was APT scale making substantially more than I. See Exhibit O. The Assistant Registrar, Barbara Thompson, is Anglo and has not charged discrimination against the College. She has substantially fewer responsibilities than I but she does compile reports for the [S]tate and other agencies relating to foreign students at the College. She indirectly supervises one assistant share with others [sic] and, very indirectly, the rest of the clerks. She has substantially less experience and responsibility but she is graded APT and earns substantially more than I.

The "Salary Information Sheets" included in Villarreal's summary judgment evidence establish that (1) Andrus is Director of the Institutional Research and Effectiveness Department; (2) Thompson is Assistant Director of the Registrar's Office; and (3) Beseda was Manager of the Payroll Department.

"More favorable treatment of a person outside a protected class can be used to show discrimination only if the circumstances are nearly identical."[53] In the context of

---

[53] *City of Forest Hill*, 189 S.W.3d at 376.

16

employment discrimination, "[e]mployees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct."[54] To establish that employees are "comparable in all material respects," a plaintiff must "show not only that the employees reported to the same supervisor, engaged in the same conduct, and had the same qualifications, but also show that there were no 'differentiating or mitigating circumstances as would distinguish . . . the employer's treatment of them.'"[55] Employees who hold different job positions are not similarly situated.[56] Ordinarily, a plaintiff is not similarly situated to another employee when the plaintiff is subordinate to that employee.[57]

Here, except for Thompson, none of the allegedly "similarly situated" employees identified by Villarreal had the same supervisor. As Villarreal notes in her affidavit, Andrus was the Director of the Institutional Research Department.[58] According to Villarreal, he has similar duties because he "prepare[s] some reports" as she does for the State Board and Board of Regents. Knioum, who, according to Villarreal, is in a different department (College Relations), is similarly situated only because he "prepares reports using the same

---

[54] *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005); *see Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006) (noting factors relevant to inquiry of whether an employee is comparable in all material respects include "whether the employees reported to the same supervisor, whether they were subject to the same standards and whether they had comparable education, experience and qualifications").

[55] *Ineichen v. Ameritech*, 410 F.3d 956, 960-61 (7th Cir. 2005) (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000)); *see Edwards v. Grand Casinos of Miss., Inc.*, 145 F. App'x 946, 948 n.2 (5th Cir. 2005) (noting that as to similarly situated requirement, circumstances surrounding the compared employees must be "nearly identical") (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001) and *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 304-05 (5th Cir. 2000)).

[56] *Miller v. Auto. Club of New Mexico, Inc.*, 420 F.3d 1098, 1115 (10th Cir. 2005).

[57] *Burks*, 464 F.3d 744 at 751.

[58] We note that David Andrus's deposition, referenced in Villarreal's affidavit, is not included in the record before us.

17

or similar databases" that she uses. Beseda was the Manager of the Payroll Department, whose job, according to Villarreal, was similar to hers because they both "used databases" and "created reports." Thompson was in the same department as Villarreal and had the same supervisor (Jordan), but Thompson was the Assistant Registrar. According to Villarreal, Thompson's duties were comparable to Villarreal's because Thompson also "compile[d] reports." However, Villarreal's own summary judgment evidence, which included Jordan's deposition testimony, established that Thompson was next-in-charge, second only to Jordan, at the Registrar's Office.

As noted, Villarreal is not "similarly situated" to Thompson because she was subordinate to Thompson, and a plaintiff is not "similarly situated" to another employee when the plaintiff is subordinate to that employee.[59] We hold that Villarreal failed to establish that any of the Anglo employees she identified were similarly situated. Accordingly, she failed to establish the fourth element of her discrimination claim, that she was treated less favorably than similarly situated members of the opposing class.[60]

We also agree with the College that based on Finch's deposition testimony, it offered legitimate, non-discriminatory reasons for its refusal to reclassify Villarreal's position as exempt, and Villarreal has presented no evidence that the College's reasons are pretextual. We hold the trial court did not err in granting the College's motion for summary judgment on no-evidence grounds with regard to Villarreal's discrimination claim.[61] We overrule

---

[59] *See Burks*, 464 F.3d 744 at 751.

[60] *See City of Forest Hill,* 189 S.W.3d at 375.

[61] We also hold that for the reasons explained above in our discussion of Villarreal's retaliation claim, the College is entitled to summary judgment on traditional grounds because it offered legitimate, non-retaliatory reasons for its actions and Villarreal had no evidence that the College's reasons were pretextual. *See Fuentes*, 282 F. App'x at 304 (finding that even if plaintiff could make prima facie case, summary judgment was proper where plaintiff could not prove defendant's justifications were pretextual).

18

Villarreal's first issue.

## C. Adverse Employment Action

By her second issue, Villarreal contends that the trial court failed to apply the definition of an "adverse employment action" established by the United States Supreme Court in *Burlington*.[62] We need not decide this issue, however, because regardless of the definition of "adverse employment action" used by the trial court, we have determined that summary judgment was properly granted (1) as to Villarreal's retaliation claim because there was no evidence of a causal nexus between the denial of her reclassification request and her exercise of protected activity, and (2) as to her discrimination claim because there was no evidence that she was treated less favorably than similarly situated Anglo employees.

## IV. Conclusion

For the foregoing reasons, we affirm the trial court's judgment dismissing Villarreal's claims.

_____
LINDA REYNA YAÑEZ,
Justice

Memorandum Opinion delivered and filed
this the 26th day of March, 2009.

---

[62] *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

19