Revised January 22, 2002

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 00-60874**
_____

**HERMAN RAGGS,**

**Plaintiff-Appellant,**

**VERSUS**

**MISSISSIPPI POWER & LIGHT COMPANY,**

**Defendant-Appellee.**

_____

Appeal from the United States District Court
for the Northern District of Mississippi

_____

January 3, 2002

Before JONES and DeMOSS, Circuit Judges, and FELDMAN, District
Judge.[1]

DeMOSS, Circuit Judge:

Plaintiff-Appellant, Herman Raggs (Raggs), filed suit against
Defendant-Appellee, Mississippi Power & Light Company (MP&L),
alleging race discrimination and retaliation in violation of Title
VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, which
arose from his 1996 layoff by MP&L and its subsequent failure to

_____

[1]District Judge for the Eastern District of Louisiana, sitting
by designation.

rehire him in 1999.  The magistrate judge presiding over the trial granted MP&L's Motion for Judgment as a Matter of Law pursuant to Rule 50 of the Federal Rules of Civil Procedure, and dismissed the case with prejudice.  We AFFIRM.

## I.  BACKGROUND

Raggs started working for MP&L in 1979 as a groundsman in the Greenville Service Department.  Groundmen assist linemen working on electric utility poles by sending equipment up to them.  Raggs was promoted in 1983 to lineman, and again in 1987 to troubleman. Linemen work fixed hours as part of a crew.  Troublemen work alone and are called in at any hour to assess utility problems.  Notably, in 1987, when Raggs became a troubleman, he was the first African-American to be hired in the Greenville Service Department.

In 1989, Raggs filed a race discrimination claim with the Equal Employment Opportunity Commission (EEOC).  The claim was eventually dismissed.  In 1990, Jimmy McDaniel (McDaniel) became the area supervisor over Raggs' department.  McDaniel gave Raggs a favorable performance evaluation for the 1990 to 1991 time period, rating him fully adequate, above average, or superior for all categories.

In 1993, however, MP&L suspended and then terminated Raggs for allegedly installing an MP&L security light at his residence and for stealing electricity.  Raggs contested his termination through

his union.  At the arbitration hearing, the arbitrator found that MP&L did not demonstrate that Raggs was fired for just cause because it had not produced sufficient evidence that he had installed the light.  Raggs, therefore, was reinstated in February 1994.

During the ten-month period Raggs was not working as a result of his termination, his position as troubleman was filled by an African-American lineman.  When Raggs returned to work, he was assigned to work the northern territory.  As a result, Raggs was required to travel greater distances than his co-workers to make service calls, which made it difficult for him to make the same quantity of service calls as his co-workers.

In 1996, MP&L decided to reduce its number of journeyman employees in response to increased competition and deregulation. Included in this category of employees were groundmen, linemen, and troublemen.  MP&L developed a formula based on seniority and performance for determining who to layoff.  This system, known as the "Employee Profile Process" (EPP), complied with the existing union contract and involved multiple evaluations and reviews. Under the EPP, supervisors evaluated employees on a 1-to-5 scale for (1) present job performance, (2) job-related personal characteristics, (3) special skills, (4) potential, and (5) other job-related factors.  McDaniel evaluated Raggs as below average or unsatisfactory in all categories except for special skills, where he marked Raggs as average.  Based on company records, written

3

customer complaints, and intra-company complaints, McDaniel claimed that Raggs (1) completed fewer assignments than other employees, (2) performed his work poorly, and (3) had a high rate of absenteeism. Raggs' EPP score was the lowest of the five employees in the service department and of the 14 employees evaluated by McDaniel. Of the employees McDaniel evaluated, the top scorer was African-American, followed by four white employees, then three African-American employees, then five more white employees, and Raggs.

Overall, MP&L laid off 17 African-Americans and 49 whites in 1996. Raggs was the only employee laid off from the service department. MP&L offered Raggs several compensation options. Raggs chose to take two weeks severance pay, which allowed him to file a grievance regarding the layoff and left him subject to being recalled.

In September 1996, Raggs filed a second EEOC complaint claiming that he was laid off because of race discrimination and retaliation for his 1989 EEOC complaint. The EEOC issued a no-cause determination and dismissed Raggs' claim in September 1997, but issued him a right to sue letter. Raggs never filed a lawsuit. Raggs did, however, file a grievance with his union protesting his layoff. A grievance arbitration hearing was held in which the arbitrator upheld the layoff decision. The arbitrator noted that Raggs' relative lack of competence as evidenced by documented incident reports, customer complaints, and his low number of work

4

orders, outweighed any seniority he might have had over competent but junior employees. Raggs did not testify at the hearing to refute or explain the evidence of his relative lack of competence.

In June 1998, Raggs filed a third EEOC complaint, re-alleging the same claims he had made in his second EEOC complaint as well as asserting that McDaniel's testimony at the 1997 arbitration hearing indicated that his low EPP rating was a pretext for his layoff, which was actually motivated by race discrimination and retaliation for his 1989 EEOC claim. The EEOC issued Raggs a right to sue letter in July 1998. Raggs sued MP&L in October 1998, alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

MP&L was required by its collective bargaining agreement to notify laid-off employees of positions available with the company. A union representative informed MP&L that it had violated this requirement by failing to send notices to Raggs and one other employee. Thereafter, MP&L sent Raggs five letters in 1997 and 1998 notifying him of open positions with the company. Raggs did not respond to three of the letters, and the other two were returned as not received.

In 1999, Raggs responded to a letter from MP&L, and indicated that he was interested in a lineman position in Greenville. MP&L, however, replied in a letter that it considered Raggs "not qualified" for the position. Michael Vaughn (Vaughn), who participated in the decision not to rehire Raggs, stated that MP&L

based this decision entirely on a review of the previous arbitrator's report, which included Raggs' EPP evaluation, his incident report file, and all the complaints lodged against him. Notably, Vaughn did not know Raggs. And McDaniel, who retired in November 1997, had no part in the decision not to rehire Raggs. Nevertheless, Raggs filed a fourth EEOC complaint alleging that MP&L's decision not to rehire him was motivated by race discrimination and retaliation. The EEOC issued Raggs a right to sue notice and, in October 1999, he amended his lawsuit to incorporate the allegations from his fourth EEOC complaint.

A jury trial was held before a magistrate judge on October 30 and 31, 2000. After the close of Raggs' evidence, MP&L moved for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure. The judge denied the motion but carried it with the case, stating that Raggs "may have established a *prima facie* case" as to MP&L's failure to rehire him in 1999. However, the judge noted that he wanted to develop the record before ruling on the motion.

At the close of all the evidence, MP&L renewed its motion for judgment as a matter of law. The magistrate judge granted the motion, stating that no rational jury could conclude that racial discrimination played a role in Raggs' termination and failure to be rehired. In explaining his decision, which was announced orally from the bench, the magistrate judge discussed only Raggs' claims

of race discrimination. The magistrate judge, however, made no mention of Raggs' claims of retaliation. Raggs now appeals that decision.

## II.   STANDARD OF REVIEW

This Court reviews *de novo* a grant of a Motion for Judgment as a Matter of Law pursuant to Rule 50 of the Federal Rules of Civil Procedure. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). Judgment as a matter of law is proper where there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party. This Court must draw all reasonable inferences in favor of the non-moving party, but may not assess the credibility of witnesses or weigh the evidence. *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990). More specifically, this Court should give credence to the evidence favoring the non-moving party and any uncontradicted or unimpeached evidence supporting the moving party where such evidence comes from disinterested witnesses. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

## III.   DISCUSSION

The issue before this Court is whether the magistrate judge erred in granting judgment as a matter of law in favor of MP&L with respect to Raggs' claims of racial discrimination and retaliation

7

under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.  We agree with the magistrate judge in this case.  Based on the evidence presented at trial, there is no legally sufficient evidentiary basis for a reasonable jury to find in favor of Raggs.

**A.  The Burden-Shifting Framework for Discrimination Cases.**

This Court considers claims of intentional discrimination, which include racial discrimination and retaliation claims based on Title VII and 42 U.S.C. § 1981, under the same rubric of analysis. *See, e.g., Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 422 n.1 (5th Cir. 2000); *Harrington v. Harris*, 118 F.3d 359, 367 (5th Cir. 1997); *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n.2 (5th Cir. 1996); *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996); *Anderson v. Douglas & Lomason Co., Inc.*, 26 F.3d 1277, 1284 n.7 (5th Cir. 1994).  In *Reeves v. Sanderson Plumbing Products, Inc.*, the Supreme Court reviewed the burden-shifting framework that governs these discrimination claims, and the relationship of that framework to a Rule 50 motion.  530 U.S. 133 (2000).  To sustain a claim under this framework, the plaintiff must first establish a *prima facie* case of discrimination.  *Reeves*, 530 U.S. at 142.  A *prima facie* case can generally be satisfied if the plaintiff (1) is a member of a protected class, (2) he was qualified for the position that he held before being discharged, (3) he was discharged, and (4) his employer filled the position

8

with a person who is not a member of the protected class. *See, e.g., **Vaughn v. Edel***, 918 F.2d 517, 521 (5th Cir. 1990); *see also*, ***McDonnell Douglas v. Green***, 411 U.S. 792, 802 & n.13 (1973).

If the plaintiff establishes a *prima facie* case of discrimination, the burden then shifts to the employer to produce evidence that its actions were justified by a legitimate, nondiscriminatory reason. ***Reeves***, 530 U.S. at 142. This burden of production "can involve no credibility assessment." ***St. Mary's Honor Ctr. v. Hicks***, 509 U.S. 502, 509 (1993). Finally, the burden then shifts back to the plaintiff to show by a preponderance of the evidence that the employer's nondiscriminatory explanation is pretextual. ***Reeves***, 530 U.S. at 143. Evidence of pretext alone may, but not always, sustain a fact-finder's determination of unlawful discrimination. *See **id.*** at 148 (holding that "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated"). In particular, evidence of pretext is not enough where the plaintiff has created only a weak issue of fact as to whether the employer's reason is untrue, and there is "abundant and uncontroverted independent evidence that no discrimination [] occurred." ***Id.*** Although the evidentiary burdens shift between the parties in this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated

9

against the plaintiff remains as all times with the plaintiff." *Id.* at 143 (quoting **Texas Dep't. of Cmty. Affairs v. Burdine**, 450 U.S. at 248, 353 (1981). Finally, when a full trial on the merits has been conducted, this Court focuses not on the plaintiff's *prima facie* case, but on the ultimate question of whether the record contains sufficient evidence to support a jury finding of race discrimination. *Id.* at 149.

At the close of Raggs' evidence, the magistrate judge concluded that Raggs, "by the thinnest of margins . . . may have established a *prima facie* case" of discrimination. Thus, the burden shifted to MP&L, which put forth legitimate, nondiscriminatory explanations for both Raggs' layoff and its refusal to rehire him. Specifically, MP&L produced evidence that Raggs was laid off in 1996 as part of a labor reduction due to outside market pressures on the company. Furthermore, MP&L stated that it refused to rehire Raggs for the lineman position in 1999 because of his poor performance rating, customer complaints, and intra-company complaints.

After both parties presented their case, the magistrate judge concluded that the only evidence in support of Raggs' claims was that he suffered two adverse employment decisions, and that he is African-American. In fact, the judge further noted that the evidence, taken as a whole, rebutted Raggs' claim that his layoff and the failure to rehire were racially based. Because MP&L was

able to provide evidence to rebut any possible *prima facie* case that *may* have been established, we must consider whether Raggs produced sufficient evidence for a reasonable jury to conclude that MP&L's nondiscriminatory explanations are false and, if so, whether a reasonable jury could further conclude that MP&L's actions were based on racial discrimination. We believe the evidence discussed below supports the magistrate judge's conclusion that a reasonable jury could not conclude that MP&L's justifications for its actions are pretext.

**B.  The 1996 Layoff.**

The record indicates that Raggs does not challenge MP&L's claim that the EPP was a nondiscriminatory review process based on both employee performance and seniority. Although Raggs claims that he had greater seniority than several white employees who were retained by MP&L, he admitted at trial that all of the white employees retained by the Greenville Service Department had greater seniority than he did. Raggs, however, does argue that the EPP methodology is vulnerable to the racial animus of individual supervisors. Raggs' primary contention is that McDaniel, based on racially discriminatory motives, gave him an extraordinarily low and undeserved performance score that resulted in his layoff. MP&L, however, asserts that McDaniel's rating was based on the substandard quality and quantity of Raggs' work.

11

In order to show that MP&L's justifications for his layoff were a pretext, Raggs claimed that he was supplied inferior equipment. For example, Raggs contends that he received radio equipment inferior to that of his white co-workers, and that his equipment put him at a disadvantage in performing his job. Specifically, Raggs testified that white employees were given a "backpack radio" that they could carry around in their trucks or pockets so they could hear the communications between the dispatcher and other employees. Raggs argues that he was disadvantaged by the fact that when he was away from his truck performing work on behalf of the company, he was not able to hear a call and respond as other employees were able to do. There is no doubt that this fact would bear directly on the integrity of Raggs' EPP score. Furthermore, Raggs argues that he was not given an air conditioned truck as was a white employee who had less time in the service department. However, Raggs presents no evidence to contradict McDaniel's testimony that trucks were assigned according to area and were replaced as they wore out.

In addition, Raggs and a white co-worker, Jimmy Peets, testified that McDaniel and other managers scrutinized and reprimanded Raggs more severely than white employees. Their testimony indicates that this treatment primarily occurred after Raggs' 1994 reinstatement. Raggs gave no specific instances of such treatment, but he was specific about the types of unfavorable treatment, which included reprimands, prohibition from taking

12

breaks, and using work hours for a promotional campaign.

Raggs contends that several prior positive evaluations conducted by McDaniel indicate that his low EPP score was a pretext for laying him off. Nonetheless, Raggs does not dispute the substance of the various complaints lodged against him, which were factored into his EPP score. Thus, Raggs' EPP score does not necessarily indicate a pretext. *See, e.g.,* ***Crawford v. Formosa Plastics Corp.***, 234 F.3d 899, 904 (5th Cir. 2000) (noting that "where there is no direct evidence of discrimination, the plaintiff needs to present sufficient evidence that [the defendant's] proffered reason is false").

Furthermore, Raggs argues that McDaniel's testimony at the 1996 arbitration hearing that Raggs' low EPP score was based partially on complaints indicates a pretext because some of the complaints in his personnel file were added after the EPP review. Raggs, however, does not dispute that his personnel file at the time of the EPP evaluation included customer and intra-company complaints. The complaints added after the EPP review did not have a negative effect on his score.

Raggs also presents evidence that, at some point in time, an unknown MP&L manager referred to Raggs as a "black so-and-so." There was no evidence that the comment was made by McDaniel or anyone else who had anything to do with Raggs' EPP evaluation and subsequent layoff. This Court has held that such unattributed

13

"stray remarks" are insufficient to support an inference of discrimination. *See, e.g.,* **E.E.O.C. v. Texas Instruments, Inc.**, 100 F.3d 1173, 1180 (5th Cir. 1996); **Waggoner v. City of Garland**, 987 F.2d 1160, 1166 (5th Cir. 1993).

Lastly, Raggs argues that the fact MP&L did not ask McDaniel for positive information about Raggs for purposes of computing his EPP score indicates a pretext. We disagree. The inclusion of only "the bad stuff" in evaluations being conducted of employees throughout the company does not in any way indicate an attempt to discriminate against a specific individual.

The sum of Raggs' relevant evidence that MP&L's assignment to him of inferior equipment, his low EPP score, and the different level of scrutiny and harshness of reprimands that he contends management applied to him, possibly could be construed as more than a "mere scintilla" of evidence of a pretext, as the magistrate judge concluded. **Wyvill v. Unite Cos. Life Ins. Co.**, 212 F.3d 296, 301 (5th Cir. 2000), *cert. denied*, 531 U.S. 1145 (2001). As we noted above, evidence of pretext alone may, but will not always, will sustain a fact-finder's inference of unlawful discrimination. In this case, however, we agree with the magistrate judge that the evidence was not sufficient for a reasonable jury to conclude that MP&L unlawfully discriminated against Raggs when it laid him off.

## C. The 1999 Failure to Rehire.

Raggs' EPP evaluation was central to MP&L's 1999 decision not to rehire him. Therefore, the above discussion regarding evidence of Raggs' low EPP score and the absence of sufficient evidence of pretext to lay him off also applies to the issue of discrimination in MP&L's decision not to rehire him. As we noted above, there is very little, if any, evidence that Raggs' low EPP score evidenced a pretext. However, there was additional evidence presented at trial regarding MP&L's failure to rehire Raggs, which we will now address.

Raggs' primary contention is that a pretext for race discrimination is evidenced in the letter MP&L sent to him indicating the reason for not rehiring him. The letter stated that the reason for not rehiring Raggs was that he was "not qualified." Raggs contends that, contrary to the rationale contained in MP&L's letter to him, he was thoroughly "qualified" for the position of lineman. MP&L does not dispute that Raggs had many years of experience and thorough knowledge of the job. Rather, MP&L asserts that it used the words "not qualified" in the letter to comply with its collective bargaining agreement, when it really meant that Raggs was an inferior or incompetent employee based on his previous record with the company.

Given Vaughn's testimony that MP&L's decision not to rehire Raggs was based entirely on the arbitrator's report, we conclude

15

that the letter sent to Raggs merely contained a poor choice of words.  We do not believe that a reasonable jury could conclude, based on this issue of semantics, that MP&L's use of the word "qualified" referred to characteristics such as experience and knowledge of the job.  Rather, we believe the only rational inference from the evidence is that MP&L used the words "not qualified" to mean incompetent or inferior.

In addition, MP&L provided further evidence in its favor on the issue of discrimination playing a factor in its decision not to rehire Raggs.  The job was originally offered to Jerry Miles, an African-American.  After he was killed in an automobile accident before he started work, the next laid-off employee to be rehired was Robert Lester, who is also African-American.  Therefore, we conclude that MP&L's 1999 failure to rehire Raggs was not racially motivated.

## D.  The Retaliation Claim.

Raggs claims that his low EPP score and the 1996 termination were in retaliation for his 1989 EEOC complaint.  In addition, Raggs claims that MP&L's refusal to rehire him was retaliatory for his 1989 and subsequent EEOC complaints as well as the lawsuit that led to this appeal.  There are three elements to a *prima facie* case of retaliation under Title VII:  (1) that the plaintiff engaged in activity protected by Title VII, (2) that an adverse employment

16

action occurred, and (3) that a causal link existed between the protected activity and the adverse action.  *See, e.g.,* **Evans v. City of Houston**, 246 F.3d 344, 352 (5th Cir. 2001).  Significantly, this Court "has held that the 'causal link' required in prong three of the prima facie case for retaliation is not as stringent as the 'but for' standard."  **Id.** at 354 (citing **Long v. Eastfield Coll.**, 88 F.3d 300, 305 n.4 (5th Cir. 1996)).

The seven-year time lapse between Raggs' 1989 EEOC claim and his 1996 layoff, and the intervening positive evaluation by McDaniel, undermine any causal connection between those two events.  *See* **Mayberry v. Vought Aircraft Co.**, 55 F.3d 1086, 1092 (5th Cir. 1995).  Thus, no reasonable jury could conclude that retaliation was the reason for MP&L's 1996 decision to layoff Raggs.  Unlike the 1989 EEOC complaint, however, the litigation in this case was initiated only five months prior to MP&L's refusal to rehire Raggs.  Nevertheless, we have held that "the mere fact that some adverse action is taken *after* an employee engages in some protected activity will not *always* be enough for a *prima facie* case. . . . Title VII's protection against retaliation does not permit EEO complainants to disregard work rules or job requirements."  **Swanson v. General Servs. Admin.**, 110 F.3d 1180, 1188 n.3 (5th Cir. 1997).  Other than the five month time period, Raggs has presented no evidence of retaliation.  Thus, we conclude that MP&L's decision not to rehire Raggs in 1999 was not a function of retaliation.

17

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM the magistrate judge's grant of judgment as a matter of law regarding the claims of race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Based on the evidence, a reasonable jury could not conclude that MP&L's justifications for laying off Raggs were pretext to hide racially motivated intentions. Further, there is not sufficient evidence for a reasonable jury to conclude that MP&L's decision not to rehire Raggs was racially motivated.