# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-50312
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
November 2, 2018

Lyle W. Cayce
Clerk

JOHN GOODE,

      Plaintiff - Appellant

v.

GREENSTREAM INTERNATIONAL, L.L.C.,

      Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:16-CV-552

Before KING, SOUTHWICK, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

After John Goode breached company security protocols and challenged the authority of its security guards, Greenstream International, L.L.C., terminated Goode's employment as a support technician in its IT department. Goode sued Greenstream, arguing that his termination was the result of race- and disability-based discrimination. The district court granted summary judgment in favor of Greenstream. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-50312

**I.**

John Goode, a black man, began working for Greenstream International, L.L.C. ("Greenstream"), in December 2013. At the time of his termination, he was a support technician in Greenstream's IT department.

Greenstream refurbishes, repairs, salvages, and resells used cell phones. Because Greenstream handles cell phones with protected user data, it maintains a secure facility and has established a "Security Screening Policy and Procedure" outlining the company's security protocols. At the beginning of each shift, all employees must enter through a checkpoint manned by security guards. The rules are strict: at 7:55 a.m., employees must quietly form a single-file line behind the entrance to the security screening area and enter one-by-one through the metal detector only after being instructed to do so by a security guard.

Goode received a copy of the Security Screening Policy and Procedure during his orientation. The procedure expressly states, "**Failure to follow the directions of the Security Guard or Greenstream International supervisors during security screening is grounds for immediate dismissal**. . . . 'Talking back' to the guard, or other disrespectful or insubordinate actions during the screening process will not be tolerated." Greenstream's "Team Member Handbook" similarly warns that failure to treat security guards with "dignity and respect" is "grounds for immediate termination." Gary Stephens, Greenstream's vice president of IT and Goode's indirect supervisor, testified that "[s]ecurity is one area that's not—was not allowed to be argued with inside the facility."

Goode has artificial knees that have metal components. For reasons that are unclear, Goode was able to pass though the metal detector without triggering the alarm for approximately the first month of his employment. After one month, the metal detector's alarm began to go off each time Goode

2

No. 18-50312

passed through. In accordance with Greenstream's security protocols, Goode would then have to go through the metal detector again, and, if the alarm sounded again, security guards would search him using a hand wand. Because this process was time-consuming and would hold up the line, Goode requested and received a change in his schedule to avoid having to go through security at peak hours. Eventually, Greenstream allowed Goode to walk around the metal detector. Goode contends that John Parra, Greenstream's head of security, was upset that Goode had received an accommodation and threatened him, saying, "If I want you gone, you[']r[e] gone."

In late 2014 or early 2015, Goode began working as a support technician, which required he be given a key to the IT room. Goode contends that Parra initially refused to provide him with a key, though Parra yielded and gave him a key after about two weeks.

Goode further alleges that when Parra finally gave him the key, Parra instructed Goode not to look at the security monitors in the IT room. Goode looked anyway and claims that all of the cameras were pointed directly at black men. When he asked Parra why the cameras were positioned that way, Parra allegedly said: "I just don't trust black men." Parra denies this interaction. Goode claims that he has had other interactions with Parra indicating his race-based animus and that other managers have made discriminatory comments to him.

On February 9, 2015, Greenstream's HR department sent him a memorandum regarding the security of the IT room. The memorandum clarified the procedures Goode must follow when bringing IT equipment through the security checkpoint, warned him that someone found his keys left in the IT room door, and reminded him of the importance of maintaining security in the IT office.

3

No. 18-50312

On February 20, 2015, Goode arrived at work and attempted to walk around one of the metal detectors, triggering an alarm. Goode claims that a security guard "yelled at [him]" and asked him "why [he] d[id] that." Goode admits that he "took offense at the way he was being spoken to and told the guard not to talk to him that way."

A security manager reported the incident to Parra, who took Goode to the HR office. Goode admits that, during this meeting, he lost his temper with Parra, stating that he "got right in [Parra's] face" and that he raised his voice. Parra and an HR employee referred the incident to Stephens. Stephens consulted Greenstream's director of HR, who had witnessed Parra and Goode's exchange. The director of HR consulted with Greenstream's vice president of operations, who in turn consulted with Greenstream's chief executive officer. All three agreed that Goode should be terminated, and Stephens terminated Goode's employment. Although Parra sent Stephens an email summary of his interaction with Goode, Greenstream and Parra deny that Parra was involved in the decision to terminate Goode.

Goode brought suit in state court, alleging discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and 42 U.S.C. § 1981.[1] Greenstream removed the suit to federal court, and the district court dismissed Goode's ADA and Title VII claims. Greenstream later moved for summary judgment on Goode's remaining § 1981 claim. In response, Goode withdrew his retaliation claim but opposed the entry of summary judgment on his discrimination claim. The district court granted Greenstream's motion for summary judgment,

---

[1] Goode also initially alleged that he was discriminated and retaliated against in violation of Texas law, but amended his complaint to remove the state-law claims after the case was removed to federal court.

4

holding that Goode had failed to provide direct or circumstantial evidence of discrimination. Goode appeals.

## II.

We review "a district court's grant of summary judgment de novo, applying the same standard on appeal as that applied below." *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, we "view[] all facts and evidence in the light most favorable to the non-moving party." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). "Where the non-moving party fails to establish 'the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' no genuine issue of material fact can exist," and summary judgment should be entered against that party. *Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 188 (5th Cir. 2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

## III.

Goode argues that the district court erred in granting summary judgment on his § 1981 claim. The district court found that Goode did not produce direct or circumstantial evidence of discrimination. We agree.

We consider claims of racial discrimination under § 1981 and Title VII "under the same rubric of analysis." *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002). "An employee can prove discrimination through direct or circumstantial evidence." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005). Evidence is "direct" if it "proves the fact [of discrimination] without inference or presumption." *Id.* Alternatively, an employee may provide circumstantial evidence of discrimination by demonstrating that "(1) [he] is a member of a protected class, (2) he was

qualified for the position that he held before being discharged, (3) he was discharged, and (4) his employer filled the position with a person who is not a member of the protected class." *Raggs*, 278 F.3d at 468. Once a plaintiff "establishes a *prima facie* case of discrimination, the burden then shifts to the employer to produce evidence that its actions were justified by a legitimate, nondiscriminatory reason." *Id.* If the employer satisfies its burden of production, "the burden then shifts back to the plaintiff to show by a preponderance of the evidence that the employer's nondiscriminatory explanation is pretextual." *Id.*

Goode argues that Parra's discriminatory comments constitute direct evidence of discrimination. "To qualify as direct evidence of discrimination, workplace comments 'must be "1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue."'" *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 764 (5th Cir. 2016) (alteration in original) (quoting *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001)). Although Goode cites his own testimony that Parra made racially discriminatory statements, the alleged comments were not made proximate in time to his termination. Goode further highlights an email Parra sent to Stephens regarding the February 20 incident, but the email does not include remarks related to Goode's race. And Goode does not argue that Parra had any authority to terminate his employment or that any individual with authority to terminate his employment made discriminatory remarks. Therefore, we conclude that Goode has failed to provide direct evidence of discrimination.

Nor do we find that Goode has provided circumstantial evidence of the alleged discrimination. Like the district court, we assume arguendo that Goode has established a prima facie case of discrimination. *See Raggs*, 278 F.3d at

468. The burden thus shifts to Greenstream "to produce evidence that its actions were justified by a legitimate, nondiscriminatory reason." *Id.* Greenstream satisfies its burden of production here. Greenstream provided evidence that it takes security very seriously due to the nature of its work and that violation of its security policy was a fireable offense. Prior to Goode's termination, Greenstream issued a written reprimand to Goode concerning a previous run-in with security and violation of company policy by leaving his keys in the door to the IT room.[2] And Goode admits that he was disrespectful to Parra on the day his employment was terminated.

Because Greenstream satisfied its burden, the burden shifts back to Goode to establish, by a preponderance of the evidence, that Greenstream's nondiscriminatory reason is pretextual. *See id.* We find that Goode has failed to satisfy his burden. Goode first analogizes his case to *Laxton v. Gap Inc.*, 333 F.3d 572 (5th Cir. 2003), arguing that Greenstream's proffered nondiscriminatory reason is false. In *Laxton*, the employer fabricated reasons for firing the employee: it accused her of hiring a bank robber, failing to report a sick day, misusing the store's walkie-talkie system, and violating store policy. *Id.* at 579. The *Laxton* employee presented evidence at trial that her employer's accusations were either false or so de minimis a reasonable jury could believe they were not the real reasons for her termination. *Id.* at 580-81. In contrast, Goode admits that he acted aggressively towards security guards. And he fails to present any evidence rebutting Greenstream's assertion that it strictly enforces its security policy. Therefore, because there is no dispute that Goode

---

[2] Goode argues that his separation notice did not discuss these incidents and, therefore, they are "irrelevant to this analysis." Goode did not raise this argument before the district court; therefore, we decline to consider it for the first time on appeal. *See Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Disc. Ctrs., Inc.*, 200 F.3d 307, 316-17 (5th Cir. 2000) ("It is a bedrock principle of appellate review that claims raised for the first time on appeal will not be considered.").

violated Greenstream's security policy by yelling at Parra, *Laxton* is inapplicable.

Goode next disputes the fact that his behavior was disruptive. But it is not our job to dictate what may constitute appropriate workplace conduct for a certain employer. *Elliott v. Grp. Med. & Surgical Serv.*, 714 F.2d 556, 566 (5th Cir. 1983) (noting that employee did not challenge "the objective *truth* of the company's stated ground of dissatisfaction with him," only that it was "inadequate to warrant his termination," and leaving "such judgments . . . for the employer, not for the court").

Goode urges us to apply the "cat's paw" theory, arguing that even though Parra did not have authority to terminate his employment, Parra influenced Stephens's decision. "[A]n employer can be held liable for a discrimination claim . . . even if the ultimate decisionmaker [him]self holds no discriminatory animus as long as the plaintiff can demonstrate that [his] decision was influenced by another who does hold such animus." *See Fisher v. Lufkin Indus., Inc.*, 847 F.3d 752, 758 (5th Cir. 2017). To connect Parra's discriminatory intent to his termination, Goode must show that Parra was either responsible for or had influence over his termination. *See Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441-42 (5th Cir. 2012) (noting that "[w]here a plaintiff offers remarks as circumstantial evidence . . . [he] need only show (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker"). Goode only argues the latter. But other than an email from Parra to Stephens summarizing the February 20 incident, Goode does not point to any evidence that Parra influenced Stephens's decision to terminate Goode's employment. Greenstream's executives made the decision to terminate Goode's employment in consultation with each other and the director of HR. Parra was not involved in these discussions. And Parra's email was not the only evidence

No. 18-50312

supporting Goode's termination—Greenstream's director of HR also witnessed the February 20 incident, and Goode had committed prior security violations as well. Thus, Goode's argument is without merit.

Therefore, because Goode failed to rebut Greenstream's proffered legitimate, nondiscriminatory reason, we find that Greenstream's motion for summary judgment was properly granted.

## IV.

For the foregoing reasons, we AFFIRM the judgment of the district court.