

# NUMBER 13-23-00415-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JUBILEE ACADEMIC CENTER INC.
D/B/A JUBILEE ACADEMIES,                                              Appellant,

v.

CECILIA SEPTIMO,                                                     Appellee.

## ON APPEAL FROM THE 445TH DISTRICT COURT
## OF CAMERON COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Peña
Memorandum Opinion by Chief Justice Contreras**

In this appeal, appellant Jubilee Academic Center Inc. d/b/a Jubilee Academies (Jubilee) argues by one issue that the trial court erred by denying its plea to the jurisdiction seeking to dismiss a suit brought by appellee Cecilia Septimo on grounds of governmental immunity. We affirm in part and reverse and remand in part.

# I. BACKGROUND

Septimo was an employee of Jubilee, a public charter school system. On December 12, 2022, Septimo filed suit against Jubilee alleging national origin discrimination and retaliation. Her petition contained the following "Factual Background":

7.1     Plaintiff was employed with Defendant for approximately 8 years serving as a Principal at two different campuses, Jubilee Livingway and Jubilee Brownsville within Cameron County, Texas. Plaintiff was a dedicated, loyal, and hardworking administrator during the time of her employment. In fact, in March 2021, Plaintiff was promoted as Head Principal that contained elementary, middle, and high school students at Jubilee Brownsville.

7.2     Plaintiff experienced no workplace issues or any performance related concerns until Dr. Kevin Phillips was hired by Defendant as its Superintendent. In fact, Plaintiff was placed on a professional growth plan on November 12, 2021, after Phillips was hired, prior to being placed on a professional growth plan by Ms. Alicia Bolt, Associate Superintendent and Supervisor to Plaintiff, after Phillips was employed as superintendent. Previously, before Phillips, Plaintiff had been evaluated [as] meeting or exceeding the requirements of Defendant through the evaluations conducted by Flor Robinson, who was Plaintiff's previous supervisor and evaluator. After Bolt became Plaintiff's supervisor at the direction of Phillips, a petty, false, and pretextual campaign began against Plaintiff. Bolt utilized false complaints and contrived reasons under the directions of Phillips for Plaintiff's professional growth plan from alleged complaints from parents and students concerning Plaintiff. No complaints or concerns from students or parents had been received concerning Plaintiff until after Phillips became superintendent and Bolt was assigned as Plaintiff's supervisor.

7.3     Plaintiff's supervisor, Ms. Alicia Bolt is also from Mexico originally where her national origin is from. Surprisingly, after Phillips became superintendent, Bolt was reassigned from San Antonio, Texas to the Rio Grande Valley that was not initiated or requested by Bolt. When Bolt became the supervisor to Plaintiff, whose national origin is also the same from Mexico, Bolt was under the direction of Phillips to convince Plaintiff to quit her job . . . . Bolt informed Plaintiff prior to her separation of employment that Plaintiff was doing her job as expected, that other employers would hire Plaintiff because of her qualifications and job performance. Bolt, in fact, stated to Plaintiff that she was doing her job as expected and disagreed with Phillips through his order and instructions to have Plaintiff placed on a performance improvement plan when Plaintiff was doing her job. Plaintiff suffered as a result of the pressure being exerted by Phillips through his direction to have Bolt serve as his messenger to discredit Plaintiff and utilize

2

Bolt who had been reassigned as a demotion without Bolt's request whose national origin is also the same as Plaintiff. During the supervision of Plaintiff by Bolt, Bolt was apologetic and demonstrated reluctance in following Phillips['s] directions.

7.4     Defendant[,] after the hiring of Phillips, has a pattern and practice of treating employees from Mexico whose national origins originated differently than employees who were not born in Mexico. Plaintiff and Bolt are two examples of mistreatment with Yolanda Cantu and Flor Robinson as examples of mistreatment. Both Cantu and Robinson were born in Mexico and were mistreated after Phillips became superintendent as a result of their national origin. The same tactics used by Phillips against Plaintiff were used against both Robinson and Cantu to separate their employment. Bolt remains employed although pressured to relocate from Defendant's central headquarters in San Antonio, Texas.

7.5     Interestingly, Plaintiff filed her complaint with Defendant at the same time Plaintiff filed her charge complaint with the Texas Workforce Commission [TWC]; Civil Rights Division initially on January 13, 2022. The complaint was directed to Mr. Sam Cofer, Area Director for Human Resources for Defendant. At no time after Plaintiff submitted her complaint of discrimination based on national origin sent directly to Cofer as Defendant's policy allowed, neither Cofer or Defendant conducted any investigation concerning Plaintiff's complaint of discrimination. At no time did Cofer interview or report any findings to Plaintiff regarding her complaint of discrimination that was made on January 13, 2022.

7.6     On June 22, 2022, Plaintiff was attending the Principal's Summit on behalf of Defendant. Dr. Philips, Dr. Alisha Bolt, [and] Dr. Leslie Sparacello approached Plaintiff at the staff meeting at the campus. Dr. Phillips began to harass Plaintiff in an unprofessional manner regarding Plaintiff's ability to perform as a campus leader. Phillips stated to Plaintiff that he was aware of the discrimination complaint that was been [sic] filed against Defendant. Dr. Phillips gave no explanation why Plaintiff's complaint had not been investigated since January 13, 2022, but emphasized that Plaintiff was not liked or respected. Incredibly, Cofer contacted Plaintiff on July 13, 2022, and informed Plaintiff, "That Plaintiff was not being invited back for the following year." At no time[] during Plaintiff's employment has Defendant stated or written any legitimate, nondiscriminatory reasons for Plaintiff's termination that occurred on July 13, 2022. Plaintiff's termination was also motivated by retaliation for Plaintiff opposing workplace discrimination. The statements made by Phillips on June 22, 2022, demonstrate that Plaintiff was terminated based on national origin (Mexico) and retaliation.

7.7     Plaintiff has been treated differently than other employees whose national origin is not from Mexico as Plaintiff's national origin is from. Furthermore, Plaintiff was discriminated against by her national origin when

Defendant separated Plaintiff's employment as a principal making approximately $90,000.00 dollars per year with benefits. There is work that is available that Plaintiff is qualified for, however, Defendant refuses to employ Plaintiff. Furthermore, Plaintiff was separated from her employment by the actions taken by Defendant and its representatives, namely, Phillips and Cofer[,] for retaliation since Plaintiff opposed workplace discrimination.

Jubilee filed a combined answer, plea to the jurisdiction, and Rule 91 motion to dismiss. In its plea, Jubilee argued that it was entitled to governmental immunity and that Septimo had failed to "state a claim" of national origin discrimination or retaliation under the Texas Commission on Human Rights Act (TCHRA). No evidence was attached to the combined pleading.[1] Septimo filed a response, and Jubilee filed a reply to the response.

After hearings on February 8 and July 26, 2023, the trial court denied Jubilee's plea to the jurisdiction and Rule 91a motion to dismiss by written order dated September 15, 2023. Subsequently that same day, Septimo filed a "First Amended Petition" adding the following allegations to the specified paragraphs in the "Factual Background" section:

> 7.2     . . . At no time[] did Defendant notify Plaintiff that Plaintiff had failed or did not successfully complete the professional growth plan prior to Plaintiff's involuntary separation of employment. . . . After Phillips became superintendent neither Bolt, Plaintiff's immediate supervisor, or Phillips had conducted a written performance evaluation on Plaintiff's job performance prior to the separation of Plaintiff's employment. At the time of Plaintiff's separation of employment, Plaintiff's evaluations contained in her personnel file met or exceeded the expectations required under Plaintiff's written job description concerning Plaintiff's performance that demonstrated that Plaintiff was a highly qualified employee. . . .
>
> 7.4     . . . Sam Cofer who is Anglo and was similarly situated as an

---

[1] Jubilee later filed an "Amended Motion for Protective Order and Motion to Stay Discovery" while its plea to the jurisdiction and Rule 91a motion were pending. On July 26, 2023, the trial court granted this motion and ordered that "all discovery in this case is abated pending resolution of Defendant's Plea to the Jurisdiction and Motion to Dismiss." Septimo filed a petition for writ of mandamus contending that the trial court abused its discretion, leaving it without an adequate appellate remedy, by rendering this order. We denied relief. *In re Septimo*, No. 13-23-00381–CV, 2023 WL 5989553, at *1 (Tex. App.—Corpus Christi–Edinburg Sept. 14, 2023, orig. proceeding) (mem. op.) ("Septimo has not explained how additional discovery is necessary to prosecute her claims and has thus not met her burden to show that the trial court's discovery order vitiated or severely compromised her ability to present viable claims in the underlying lawsuit.").

4

administrator as Plaintiff was treated differently by Phillips since Cofer is Anglo and national origin from the United States. Cofer failed to conduct a Civil Rights Investigation and inform Plaintiff, although [she] submitted her request to file a discrimination complaint based on her national origin against Defendant. Cofer failed as an administrator with supervisory capacity to conduct the investigation as he was required to under Defendant's policy, yet Cofer remains employed. Furthermore, Cofer after a mediation was conducted on July 13, 2022, between the parties contacted Plaintiff on the same day and informed her that her employment would be separated at the end of the contract period. . . .

7.6     . . . After Plaintiff was separated from her employment, she was replaced by Irma Castillo. Irma Castillo's national origin is from the United States who replaced Plaintiff whose national origin is from Mexico.

7.7     . . . Plaintiff was replaced by an employee whose national origin is not from Mexico. . . . Plaintiff was separated from her employment by the actions taken by Defendant and its representatives, namely, Phillips and Cofer for retaliation since Plaintiff opposed workplace discrimination by filing a discrimination complaint that Defendant was aware of prior to Plaintiff's separation of employment.

Jubilee filed a combined amended answer, amended plea to the jurisdiction, amended Rule 91a motion, and motion to strike Septimo's first amended petition. The trial court did not rule on the amended plea, amended Rule 91 motion, or motion to strike.

Jubilee then perfected this accelerated interlocutory appeal of the trial court's September 15, 2023 order. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (permitting an immediate appeal from an interlocutory order that "grants or denies a plea to the jurisdiction by a governmental unit"); *El Paso Educ. Initiative, Inc. v. Amex Props., LLC*, 602 S.W.3d 521, 529–30 (Tex. 2020) (providing that an open-enrollment charter school such as Jubilee "act[s] as an arm of the State government"); *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 325 (Tex. 2006) ("[W]here the governing statutory authority demonstrates legislative intent to grant an entity the nature, purposes, and powers of an arm of the State government, that entity is a government unit unto itself." (internal

5

quotation omitted)).

## II. DISCUSSION

### A. Standard of Review and Applicable Law

Sovereign immunity protects the State and its agencies from lawsuits for money damages and deprives a trial court of subject matter jurisdiction over the plaintiff's claims unless immunity has been waived by the legislature. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 & n.2 (Tex. 2008). Open-enrollment charter schools such as Jubilee are entitled to immunity in the same respect as public schools. *El Paso Educ. Initiative*, 602 S.W.3d at 529–30; *see* TEX. EDUC. CODE ANN. § 12.1056. Whether a trial court has subject matter jurisdiction is a question of law that we review de novo. *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 682 (Tex. 2020).

"When a plea to the jurisdiction challenges the pleadings," as here, "we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We liberally construe the pleadings and look to the pleader's intent. *Id.* "If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction," the plaintiff should be afforded the opportunity to amend. *Id.* If the pleadings affirmatively negate jurisdiction, then the plea may be granted without affording the plaintiff this opportunity. *Id.* at 227.[2]

---

[2] We previously denied motions by Septimo to dismiss and abate this appeal which argued that the appeal is moot because "[her] original petition no longer constitutes the live pleading before the trial court" and any opinion we issue would therefore be advisory. *See In re J.J.R.S.*, 627 S.W.3d 211 (Tex. 2021) (noting that Texas appellate courts lack jurisdiction to decide moot controversies and render advisory opinions) (citing TEX. CONST. art. II, § 1). We note that the appeal is not moot, and our opinion is not

6

**B. TCHRA**

The TCHRA prohibits, among other things, national origin discrimination and retaliation by employers. *See* TEX. LAB. CODE ANN. § 21.055 (providing that an employer commits an unlawful employment practice if it retaliates or discriminates against a person who, under chapter 21 of the labor code, "(1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding or hearing"); *id.* § 21.051 ("An employer commits an unlawful employment practice if because of . . . national origin . . . the employer . . . fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment."). "The TCHRA waives immunity, but only when the plaintiff states a claim for conduct that actually violates the statute." *Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 52 (Tex. 2021) (quoting *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018)). Thus, if a plaintiff fails to allege a viable claim for violation of the TCHRA, then the trial court lacks jurisdiction and the claim should be dismissed. *Garcia*, 372 S.W.3d at 637.

To establish a national origin discrimination claim, a plaintiff must show: (1) she was a member of a protected class, (2) she was qualified for her employment position, (3) she was subject to an adverse employment decision, and (4) she was replaced by someone outside of the protected class, or she was treated less favorably than similarly

---

advisory, because theoretically, if the factual allegations in Septimo's original petition had affirmatively negated jurisdiction, then judgment may be rendered dismissing her suit without affording her the opportunity to replead. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004); *see also* TEX. R. APP. P. 47.1.

7

situated members of the opposite class. *Michael v. City of Dallas*, 314 S.W.3d 687, 690–91 (Tex. App.—Dallas 2010, no pet.).

To establish a claim of retaliation under the statute, a plaintiff must show: "(1) she engaged in an activity protected by the TCHRA, (2) she experienced a material adverse employment action, and (3) a causal link exists between the protected activity and the adverse action." *Clark*, 544 S.W.3d at 786; *see Lara*, 625 S.W.3d at 58. An employee engages in a protected activity by, among other things, filing an internal complaint, opposing a discriminatory practice, or making a charge of discrimination. *See Clark*, 544 S.W.3d at 786 (citing TEX. LAB. CODE ANN. § 21.055).

One of the express purposes of the TCHRA is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments," TEX. LAB. CODE ANN. § 21.0001(1); accordingly, that "analogous federal statute[] and the cases interpreting [it] guide our reading of the TCHRA." *Lara*, 625 S.W.3d at 52.

## C. Analysis

Jubilee argues that its plea to the jurisdiction should have been granted because "Septimo failed to state a claim of either national origin discrimination or retaliation." It further contends that the trial court erred to the extent it found a genuine issue of material fact concerning jurisdiction.

As to the discrimination claim, Jubilee contends, as it did in its plea to the jurisdiction, that Septimo failed to plead that she was (1) qualified for the position from which she was terminated, or (2) treated less favorably than similarly situated members of an opposing class. *See Michael*, 314 S.W.3d at 690–91. We agree as to the latter element. Septimo baldly alleged in her original petition that Jubilee "has a pattern and

8

practice of treating employees from Mexico . . . differently than employees who were not born in Mexico"; however, she did not allege that employees who were not born in Mexico were treated *more favorably* than she was, nor did she allege any facts which would support such a conclusion. *See Michael*, 314 S.W.3d at 690–91. Moreover, she did not allege in her original petition that any "similarly situated members of an *opposing* class" were treated differently than she was, nor did she allege any facts which would support such a conclusion. *See id.* Because Septimo's original petition failed to plead a viable national origin discrimination claim under the TCHRA, the trial court erred by denying Jubilee's plea to the jurisdiction as to this claim. *See Garcia*, 372 S.W.3d at 637.

However, Jubilee does not argue, and we do not find, that Septimo's original petition affirmatively negated jurisdiction as to the discrimination claim. Therefore, though the trial court should have granted the plea to the jurisdiction as to this claim, it should also have allowed Septimo to replead. *See Miranda*, 133 S.W.3d at 227. As noted, since the order on appeal was rendered, Septimo has filed an amended petition which includes additional factual allegations as to the discrimination claim, and Jubilee has filed a motion to strike that pleading as well as an amended plea to the jurisdiction. The trial court has not yet ruled on Jubilee's motion to strike or amended plea. We will not pass judgment on the sufficiency of Septimo's amended pleading until the trial court has had the opportunity to rule on Jubilee's motion to strike and amended plea in the first instance.

The analysis is different with respect to the retaliation claim. Jubilee argues on appeal, as it did in its plea, that Septimo's original petition failed to plead facts establishing the causation element of this claim—i.e., that the alleged protected activities (her filing of an internal discrimination complaint and a discrimination charge with the TWC) caused

9

the adverse employment action (her termination). We disagree. Septimo alleged that she "was separated from her employment by the actions taken by [Jubilee] and its representatives, namely, Phillips and Cofer[,] for retaliation since Plaintiff opposed workplace discrimination." Although the wording of this allegation could be more straightforward, its obvious implication is that the reason Septimo was fired was because she complained of discrimination. *See Miranda*, 133 S.W.3d at 226 (noting that, at this stage of the proceedings, we liberally construe the pleadings and look to the pleader's intent).

Citing *Jackson v. Honeywell International, Inc.*, Jubilee argues that, because there was a gap of six months between her complaints and her termination, Septimo "has not established a causal link" between the two events. *See* 601 Fed. App'x 280, 287 (5th Cir. 2015) ("We have found a five[-]month period between the protected activity and the adverse employment action insufficient to establish a causal link." (citing *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002)). However, in *Raggs*, the case cited in *Jackson*, the court was evaluating whether the record supported the trial court's judgment as a matter of law, and there was "no evidence" of causation "[o]ther than the five[-]month time period." 278 F.3d at 472. Here, as noted above, Septimo specifically alleged that her termination was due to "retaliation since Plaintiff opposed workplace discrimination." The fact, conceded by Septimo, that the firing took place six months after the complaint, does not negate her specific allegation as to causation. Jubilee essentially urges that no retaliation claim can be viable if more than five months elapsed between the protected activity and the adverse employment action. The caselaw does not support that conclusion and we decline to adopt it here.

Jubilee also argues that Septimo's original petition was deficient because it did not allege that Phillips either (1) knew about Septimo's prior discrimination complaint, or (2) "had anything to do with the decision to terminate her employment." *See Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003) ("[I]n order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity."); *Gee v. Principi*, 289 F.3d 342, 346 (5th Cir. 2002) ("[I]n determining whether an adverse employment action was taken as a result of retaliation, our focus is on the final decisionmaker."). Again, we disagree. Septimo alleged in her original petition that, on June 22, 2022, "Phillips stated to [Septimo] that he was aware of the discrimination complaint that was . . . filed against [Jubilee]." She also alleged that Phillips was Jubilee's superintendent, and that Phillips was the one who advised her of her termination. These factual allegations, when liberally construed and viewed in light of Septimo's intent, *see Miranda*, 133 S.W.3d at 226, support a finding that Jubilee, and Phillips in particular, were aware of the discrimination complaint and made the decision to terminate her employment.

We conclude that Septimo's original petition alleged a viable cause of action for retaliation under the TCHRA. Accordingly, Jubilee's issue is overruled as to the retaliation claim.

### III.   CONCLUSION

We reverse that part of the trial court's judgment denying Jubilee's plea to the jurisdiction as to Septimo's national origin discrimination claim, and we remand with

11

instructions to allow Septimo to replead. The remainder of the judgment is affirmed.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
11th day of April, 2024.